**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOLDIE DUMAS,                          No C 04-1436 VRW

        Plaintiff,

                              ORDER

      v

JO ANNE B BARNHARDT, Commissioner
of Social Security,

        Defendant.

_____/

      Plaintiff Goldie Dumas brings this action under 42 USC section 405(g), challenging the final decision of the Social Security Administration ("SSA") to deny her applications for supplemental security income benefits and disability insurance benefits.  Pl Mot (Doc # 18) at 1.  The parties have filed cross-motions for summary judgment.  For the reasons that follow, the court DENIES plaintiff's motion for summary judgment and GRANTS defendant Jo Anne B Barnhart's motion for summary judgment.

\\

I

A

Plaintiff is in her mid-sixties.  Plaintiff has not completed high school.  She has stated that her highest level of education completed was, variously, the 11th grade (Administrative Record, Doc #14 ("AR") at 108, 287), the 3rd grade (AR 120), the 6th grade (AR 199) and the 12th grade (AR 149).  In addition, plaintiff stated that in school she received special education for "slow learning" (AR 288) and "for pregnant [illegible word]."  AR 149.  Further, plaintiff stated that her mother institutionalized her in 1950 at the age of twelve and that she received mental health counseling for six months thereafter.  AR 120, 200, 261.

Plaintiff's past jobs have included housekeeper, home-care provider and nurse's aide, mostly caring for elderly people.  AR 103, 289.  Plaintiff stated that she was fired from her last job because she was forgetful and "was drinking a lot and [] didn't show up to work often."  AR 200.  Plaintiff also stated that she was dismissed from jobs because the elderly people she cared for passed away and because of personality conflicts.  AR 289.  Plaintiff also has a long history of drug and alcohol abuse.  AR 156, 259.

On November 7, 2001 and January 22, 2002, plaintiff filed two separate applications for social security benefits under Title II of the Social Security Act (the "Act") claiming disability due to diabetes and sickle cell disease.  AR 75, 79.  Plaintiff had previously filed applications for social security benefits which were denied upon reconsideration on November 8, 1996.  AR 172.

\\

2

United States District Court

For the Northern District of California

Plaintiff's new applications stated that she became unable to work in 1995 and also stated the following: "feet get swollen [sic] due to diabetes, cannot stand for more than 2 hrs a day, tire easily, hard time concentrating and focusing." AR 102. Plaintiffs applications also stated that she used alcohol and drugs such as cocaine, crack and marijuana from 1987 to 1992 (AR 109), and that she was "born w/ diabetes & sickocell [sic]: condition didn't affect her until 2000. So, with age her condition is worsening." AR 109.

On January 22, 2002, plaintiff filed two more applications for social security benefits. AR 3, 79. These applications stated that plaintiff became unable to work because of her impairments on January 1, 2001. AR 79. Also on January 22, 2002, plaintiff amended her then-pending applications to state that she became unable to work on April 1, 2001. AR 84.

On February 12, 2002, plaintiff stated in a daily activities questionnaire, completed with assistance from her "acquaintance" Beverly Chenieu, that "she has problems comprehending routine info," she "[can] only work domestic type jobs with supervision" and she "has not been able to continue employment as a care-giver due to anger management concerns." AR 124. Plaintiff also stated that she shops for groceries on her own, prepares her own meals but "ha[s] to be supervised so that fire is controlled," performs "all chores with some supervision," is a "talented and artistic woman" and "completes simple tasks." AR 121, 124.

Plaintiff's acquaintance Ms Chenieu completed an undated third-party daily activities questionnaire that contradicted some

3

of the statements in plaintiff's daily activities questionnaire, notably that plaintiff "is great with chores" and required no assistance in performing her chores.  AR 117.

On February 7, 2002, the SSA requested records regarding plaintiff's alleged impairments from facilities plaintiff designated: the Contra Costa Regional Medical Center and the Alameda Central Health Center.  AR 204, 225.  The Alameda Central Health Center replied that it had no relevant information.  AR 226. The SSA received few relevant medical records from Contra Costa Health Services (AR 204-220): a December 18, 1998, clinic note stating that plaintiff had "sickle cell trait, no disease" (AR 214), and a March 29, 1999, note stating that plaintiff was "O.K. for in home care."  AR 212.

In February 2002, plaintiff underwent SSA-ordered physical and psychological consultative evaluations.  AR 199, 221. Plaintiff claimed disability due to "memory problems" during both consultative evaluations.  Id.  On February 19, 2002, Dr Amit Rajguru, of QTC Medical Group, conducted the consultative physical evaluations and found that plaintiff had no functional limitations. AR 224.  Dr Rajguru noted that plaintiff had a history of mild chronic headaches and "state[d] [that plaintiff] has a history of diabetes mellitus; however, she is not treated for this, nor does she seek medical care on a routine basis."  AR 222.  Dr Rajguru's "impression" was that "the [plaintiff] is a 60-year-old female with a history of memory problems and possible diabetes mellitus with no objective findings on my examination at this time."  AR 224.

On February 28, 2002, Dr Sokley Khoi, of Health Analysis, Inc, conducted the consultative psychological evaluation and found

**United States District Court**
For the Northern District of California

**4**

that "[b]ased on today's evaluation there appear[s] to be no indication of a severe psychiatric disorder." AR 202. During the evaluation, Dr Khoi noted that plaintiff "currently drinks a pint of gin every day * * * [and] currently uses three to four joints of marijuana per day. The [plaintiff] reported that she drank a pint of gin the night prior to [Dr Khoi's consultative psychological] evaluations and reported that she smoked five joints of marijuana the night prior to the evaluation." AR 200.

Dr Khoi also noted that plaintiff "stated that she is independently able to do all activities of daily living" and that "her usual activities include going for a walk, running errands, socializing with friends, going out to eat at shelters, watching television, listening to music, or napping during the day." AR 199. Dr Khoi further noted that plaintiff "was well dressed * * *. She was well groomed. She wore makeup, including lipstick and eye shadow. Her eyebrows were well plucked. She wore red fingernail polish." AR 200.

In addition, while plaintiff "was unable to correctly complete serial sevens" (i e, serial subtraction of seven) and "was unable to spell 'WORLD'" (both two alternative tests of attention in the Mini-Mental State Examination (MMSE), a cognitive screening tool), Dr Khoi noted that plaintiff "had no obvious speech or language comprehension difficulties," her "mood was neutral" and "[she] denied suicidal or homicidal ideation. She denied auditory or visual hallucinations. During the current evaluation, [her] thought processes appeared logical and coherent." Id.

The psychological evaluation included a Bender-Gestalt Test, which is used to evaluate visual-motor maturity, neurological

United States District Court

For the Northern District of California

impairments and emotional disturbances, and is sometimes used in conjunction with other personality tests to determine the presence of emotional and psychiatric disturbances such as schizophrenia. AR 201.  The evaluation also included a Weschler Adult Intelligence Scale ("WAIS-III") test, which included IQ tests that yielded scores in the "extremely low" range (61-68).  Id.  Plaintiff's levels of ability for the various administered tests ranged from "boderline" to "extremely low," "impaired" and "inconclusive."  Id. Dr Khoi noted, however, that "clinical observation and the [plaintiff's] pattern of performance on the tests administered suggested inadequate motivation and effort.  Therefore, today's test results are considered invalid."  AR 202.

Dr Khoi noted that plaintiff "appears to be functioning within the low average to average range of intellectual ability." Id.  Further, while Dr Khoi was "unable to determine due to decreased effort and motivation" a number of work-related abilities, Dr Khoi found that plaintiff had no level of impairment when it came to the "ability to follow simple instructions," "the ability to withstand the stress of a routine work day," and "the ability to interact appropriately with co-workers, supervisors, and public on a regular basis."  Id.

Dr Khoi diagnosed plaintiff with "alcohol and cannabis abuse, r/o alcohol and cannabis dependence malingering (cognitive symptoms)."  AR 201.  The American Psychiatric Association defines "malingering" as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as * * * avoiding work, obtaining financial compensation * * *."  <u>Diagnostic and Statistical Manual</u>

United States District Court

For the Northern District of California

*of Mental Disorders*, 4th ed, text revision (Washington, DC: American Psychiatric Association, 2000) ("DSM-IV"), 739.

SSA non-examining physician evaluations agreed with the consulting physicians' conclusions.  On March 18, 2002, Dr Lola Lee Van Compernolle found that the evidence in plaintiff's file did not establish a medically determinable impairment.  AR 203.  On July 16, 2002, Dr Joan Bradus affirmed this assessment.  Id.

On March 20, 2002, Dr Thomas Gragg found that the evidence in plaintiff's file established that plaintiff was "not significantly limited" in the categories of "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation."  AR 179-180.  Dr Gragg also determined that plaintiff's functional capacity assessment was "hx of substance abuse - no current restrictions."  AR 180.  Dr Gragg based plaintiff's medical disposition on substance addiction disorders (AR 183) and rated plaintiff's degree of limitation as "mild" in the functional limitation categories of "restriction of activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence, or pace."  AR 193.

On March 21, 2002, an internal SSA analysis of the evidence found that there were "no objective findings to indicate impairment of functioning," that plaintiff was "not credible on a physical basis because he [sic] physical allegations clearly do not limit her functioning," that "[plaintiff's] past medical records reveal that she has sickle cell trait, not disease.  There is no evidence that she has diabetes, or anything else," and that "according to [the record plaintiff] has no severe psychiatric

7

disorder and her performance was considered invalid due to inadequate motivation and effort.  There [sic] [plaintiff's] condition is probably non-severe."  AR 172-173.

On March 25, 2002, the SSA's disability determination returned a primary diagnosis of "None Established (Med. Evd. - Insuf. to Est. Diagnosis)" and a secondary diagnosis of "Substance Dependence Disorders (Drug)."  AR 51.  On March 25, 2002, the SSA denied plaintiff's applications for social security benefits.  AR 53.  Plaintiff submitted a reconsideration disability report dated April 8, 2002, in which plaintiff stated she was experiencing "more memory loss" and alleged extreme fatigue, memory loss and inability to comprehend simple tasks. AR 126.  Plaintiff's request for reconsideration was denied.  AR 63.  Plaintiff submitted a timely request for a hearing before an administrative law judge ("ALJ").  AR 67.  From this time on, plaintiff appears to have abandoned her claims of disability due to diabetes and sickle cell disease.

On March 24, 2003, plaintiff visited the San Francisco General Hospital Medical Center Emergency Department for pain in her right shoulder ("c/o 2 wk [right] shoulder p w/o trauma.  Feels like torn tendon * * *").  AR 252.  Plaintiff also complained of depression (though plaintiff denied suicidal tendencies and "feelings of worthlessness") and hallucinations (though the resident physician found plaintiff had "no paranoia").  Id.  Plaintiff was diagnosed with "[right] shoulder biceps tendinitis."  AR 253.

On May 7, 2003, during the first of several general visits with Dr Cynthia Salinas, a level II resident at the San Francisco General Hospital Medical Center, plaintiff complained of

United States District Court

For the Northern District of California

persistent right shoulder pain.  AR 250.  Dr Salinas noted that plaintiff took Motrin and "Tyco #3 for pain" (i e, Tylenol #3, acetaminophen with codeine, a narcotic analgesic prescribed for mild to moderately severe pain).  Id.  On May 29, 2003, Dr Salinas examined plaintiff during an "urgent care apt for rash.  [Patient complained of right] shoulder pain [and a] rash on [her] buttocks."  AR 251.  Dr Salinas found no evidence of a rash and noted that plaintiff took Motrin for her shoulder pain.  Id.

On June 26, 2003, Dr Salinas again examined plaintiff, who still complained of persistent right shoulder pain.  AR 248.  Dr Salinas prescribed plaintiff with naprosyn (i e, naproxen, a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties used to relieve mild to moderate pain).  Id.  Further, Dr Salinas noted that "[patient complains of] voices even now" and referred plaintiff to the Westside Community Mental Health Center of San Francisco.  Id.

On June 28, 2003, Dr Girish Subramanyan, of the Westside Community Mental Health Center of San Francisco, examined plaintiff, who complained of "hearing voices including her Mother, sister and first husband.  She also [complained of] symptoms of depression and poor memory," and stated "that she has had [sic] voices for the past 2 years."  AR 233.  During the examination, plaintiff stated that she "used to be a heavy drinker" (AR 231) and that her "[l]ast drink [was] 3-4 'little bottles' of champagne last night. [She] [a]dmits to drinking 1x/week about 3-4 'little bottles' of champagne," "uses [marijuana] 1x/week," and "used to have a crack habit in the past, none now."  AR 233.

\\

9

United States District Court

For the Northern District of California

Dr Subramanyan noted that plaintiff was "fashionably dressed," had "well-done hair" and was "pleasant/cooperative," but was "spacy, slow to respond - as if she were high/stoned.  Mood - 'Depressed.'"  AR 234.  In addition, Dr Subramanyan noted that plaintiff "did not know how to spell world" and was "working with an 'attorney' to get some 'disability.'"  AR 233.

Dr Subramanyan diagnosed plaintiff with "Psychotic Disorder NOS [i e, Not Otherwise Specified], Depressive Disorder NOS, Rule out MDD [i e, Major Depressive Disorder] with Psychotic Features, r/o [i e, rule out] primary psychotic disorder, r/o Polysubstance Dependence (EtoH/MJ), r/o Cognitive Disorder NOS, early dementing condition."  AR 234.  Under Axis IV, Dr Subramanyan noted "poor overall psychosocial supports, financial, estrangement from family."  Id.

Dr Subramanyan's report described plaintiff's psychiatric etiology as "unclear," noted the need for further work-up to assess substance abuse and prescribed Risperidone (an antipsychotic drug used to treat schizophrenia, psychosis and bipolar disorder) and Zoloft (an antidepressant used to treat depression and anxiety) for plaintiff's psychosis and depression, respectively.  Id.

On July 9, 2003, plaintiff stated in a SSA disability report that she had "problems comprehending / poor concentration" which limited her ability to work starting April 1, 2001, and that she stopped working on July 25, 2001, because "I injuries [sic] my arm."  AR 143.

Also on July 9, 2003, Dr Salinas again examined plaintiff and reviewed Dr Subramanyan's report, noting that plaintiff was still complaining of right shoulder pain, hearing voices and

**10**

United States District Court

For the Northern District of California

depression.  AR 244.  Dr Salinas diagnosed plaintiff with hypertension and proteinuria, and referred in her clinic notes to Dr Subramanyan's diagnosis of psychosis and depression.  Id.  On July 21, 2003, Dr Salinas again examined plaintiff and noted that plaintiff had no pain and an "improved mood."  AR 240.  Dr Salinas also put plaintiff on blood pressure medication for persistent high blood pressure and high lipidemia.  Id.

In a "disability & adult programs division - Evaluation Form For Mental Disorders" submitted in July 2003, Dr Salinas noted that plaintiff has alleged a "history of 'hearing voices.'  She has since reported voices since childhood."  AR 236.  Dr Salinas also noted that plaintiff denied drug and alcohol use (AR 236) and that plaintiff had a "pleasant attitude," had "no current feelings of worthlessness, fearfulness" (AR 237) and was a "[w]ell dressed African American woman, upright posture, normal gait.  Mannerisms childlike at times and often affected by loud voices in clinic."  AR 236.

In addition, Dr Salinas noted that plaintiff had "no outward psychosis (i e disorganized behavior)," that plaintiff "[could] perform activities of daily living.  She does rely on support of friends for food/shelter," that plaintiff's "interactions [with] staff + physician appropriate" and that plaintiff had "normal concentration.  Able to perform ~~simple~~ [sic] tasks and oral instructions."  AR 237.  Further, Dr Salinas noted that plaintiff was diagnosed with "Depression" and "Psychosis NOS" (referring to Dr Subramanyan's diagnosis) and that plaintiff's prognosis was "good."  AR 238.

\\

11

United States District Court

For the Northern District of California

On July 28, 2003, the ALJ held a hearing in which plaintiff was represented by counsel and testified that she was disabled due to depression, hearing voices, and pain in her right arm.  AR 297-99, 304.  Plaintiff stated that she had suffered depression for the past four or five years (AR 297-98) and that "losing [her] mother and [her] father" made her depressed.  AR 300. Plaintiff's mother passed away in 2002 and her father passed away in 1988.  AR 301.  Plaintiff also asserted that she has been hearing voices for the past two or three years.  AR 299.

Plaintiff testified that she could not continue her previous work because "[she is] just really tired" (AR 302) and she "forget[s] things and dates" (AR 304), and that she had pain in her arm for the past four months, but that her arm is getting better with pain medication.  AR 305.  In addition, plaintiff stated that she has high blood pressure (AR 305) and that she can only walk "maybe a block or two" before she needs to rest, which she does "maybe two, three hours, four hours" every day because her medication "makes [her] woozy."  AR 307.  Plaintiff further stated that she smoked crack every day around 1999 or 2000 and stopped using crack, marijuana and alcohol "about six months ago" (AR 291-92), but still drinks "a pint, half a pint" of cognac every other day.  AR 310.

Dr Gerald Belchiek, a vocational expert, testified that plaintiff's past work as a nurse's aide was at the unskilled, rather than skilled level, and that such work was classified at the medium exertional level, because of the need to move patients.  AR 311-12.  The vocational expert did not give testimony as to plaintiff's current occupational outlook.

United States District Court

For the Northern District of California

At the hearing, the ALJ stated that the key inquiry was whether or not drug addiction or alcoholism ("DAA") was a contributing factor material to the determination of plaintiff's disability.  AR 312-13.  The ALJ held the record open for thirty days to allow plaintiff and her counsel to submit additional medical reports.  AR 316.  Two additional reports were later submitted: one by treating internist Dr Salinas, the other by a psychiatrist, Dr Fischer.

On August 14, 2003, Dr Salinas completed a questionnaire from the SSA in which she stated that she has seen plaintiff every month since May 2003 "to medically manage hypertension, proteinuria and coordinate mental health services with outside clinic."  AR 254.  Dr Salinas noted that plaintiff "complains of right shoulder pain * * * hearing voices and is at times anxious.  Poor concentration," and diagnosed plaintiff with "[h]ypertension, proteinuria (with ongoing workup for renal disease), psychosis NOS and hyperlipidemia."  Id.

In addition, Dr Salinas also noted that plaintiff's prognosis was "good," that plaintiff's impairment has lasted or can be expected to last at least twelve months, that plaintiff can continuously stand for at least six of eight hours, that plaintiff can continuously sit upright for at least six of eight hours that plaintiff can walk "probably 5" city blocks without stopping, can frequently lift 5-10 pounds over an eight hour period and can frequently carry 5-10 pounds.  AR 255.  Dr Salinas further noted that "[plaintiff] appears to have decreased ability to handle loud environments and crowds.  In these settings her anxiety level increases and concentration ability decreases."  AR 256.

1    On August 22, 2003, plaintiff saw Dr Stephen Fisher, of
2    the San Francisco Community Mental Health Services, for a
3    "psychiatric/medication evaluation."  AR 259-65.  Dr Fisher noted
4    that plaintiff "has a very lengthy history of emotional problems
5    going back to childhood but she [has presented] new symptoms in the
6    past year involving hearing voices and this is both associated in
7    her mind with previous illicit drug use ('flashbacks') and her
8    depressed mood."  AR 259.  Plaintiff stated that she "[came] from a
9    very disturbed background where her mother was extremely abusive,
10   including beating her, chaining her into the house, and whipping
11   her with an ironing cord."  AR 261.

12   Dr Fisher also noted that "[plaintiff] is a very well-
13   dressed, well-groomed, woman who appears to be her stated age, with
14   dyed hair color and shows no sign of any physical impairment.  She
15   is alert, oriented, and with good speech.  It should be noted that
16   no formal mental status testing was done but despite her complaint
17   of memory difficulty, did not evidence any during this evaluation
18   today.  Her communications did not have any psychotic quality -
19   although * * * she is reporting hearing voices.  She says the
20   voices were partically [sic] relieved by the Risperdal * * * Her
21   mood seemed mildly depressed and she looked tired but with no
22   agitation or indication of any acute anxiety."  AR 264.  In
23   addition, Dr Fischer noted that plaintiff "stopped using drugs
24   entirely as of one year ago but still drinks [a half of a fifth
25   bottle of cognac] about once a week."  AR 259.

26   Dr Fisher diagnosed plaintiff with "1) Dysthymic Disorder
27   (300.4) (a type of depression), 2) Psychotic Disorder, NOS,
28   (298.9), possibly secondary to depression or hallucinosis,

14

United States District Court

For the Northern District of California

secondary to 3) Polysubstance Dependence (304.80) in partial remission," and "Hypertension."  AR 264-65.  Dr Fisher recommended that "[plaintiff] re-start the previous medications, Risperdal 0.5 mgm and Zoloft 25 mgm," increased the dosage of plaintiff's medication and suggested "to the [plaintiff] that she consider getting into a recovery program or attend 12-step self-held meetings."  AR 265.

On October 24, 2003, the ALJ issued a decision denying plaintiff's applications for social security benefits based on "careful consideration of the entire record, including the testimony presented at the hearing, the arguments made by the [plaintiff's] representative" and the evidence presented at the hearing.  AR 14-19.

The ALJ noted that plaintiff's alleged impairments, save her recent allegations of shoulder pain (AR 16), met the twelve-month duration requirement set forth in regulations §§ 404.1509 and 416.909, and found that: (1) plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 1, 2001; (2) plaintiff had "severe limitations due to depression, psychosis NOS; cocaine and crack cocaine addiction in remission by history; and ongoing alcohol addiction"; (3) plaintiff's impairments did not meet any of the impairments in the Listing of Impairments; (4) plaintiff's allegations regarding the extent of her impairments were not supported by the medical evidence and do not support a finding of disability; (5) factoring in the effects of plaintiff's drug and alcohol use, plaintiff lacks the residual functional capacity to perform sustained work activity at any exertion level and is therefore unable to perform her past

relevant work and is unable to perform other work which exists in substantial numbers in the national economy; and (6) but for plaintiff's use of drugs and alcohol, plaintiff would be able to perform work which exists in substantial numbers in the national economy because plaintiff's alcohol addiction is a contributing factor material to the determination of disability pursuant to Public Law 104-121 and plaintiff would not be disabled if she stopped drinking.  AR 18.

In reaching these conclusions, the ALJ noted that "[t]he medical evidence in this case is minimal," and discussed the medical opinions of Drs Rajguru, Khoi, Salinas and Fisher.  AR 16-17.  The ALJ made no mention of Dr Subramanyan's medical opinion.  Id.  The ALJ also made note of plaintiff's history of drug and alcohol abuse and of her testimony at the hearing that "she currently drinks from one half to one pint of cognac every other day.  Her presentation at the hearing was consistent with this testimony."  AR 17.  On the basis of his findings regarding DAA, the ALJ found plaintiff ineligible for benefits, citing a 1996 congressional enactment barring awards of benefits if a claimant's DAA is a contributing factor material to the determination of his or her disability, discussed in Part III A, _infra_.

On December 23, 2003, plaintiff appealed to the SSA's Appeals Council.  AR 9.  On February 9, 2004, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became final.  AR 5.  On April 13, 2004 plaintiff commenced the instant action for judicial review of the ALJ's final decision.  Compl (Doc #1).

\\

United States District Court

For the Northern District of California

## II

The court's jurisdiction is limited to determining whether the SSA's denial of benefits is supported by substantial evidence in the administrative record.  42 USC § 405(g).  A district court may overturn a decision to deny benefits only if the decision is not supported by substantial evidence or if the decision is based on legal error.  See Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989).  The Ninth Circuit defines "substantial evidence" as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. See id; Magallanes, 881 F2d at 750.  The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation."  Andrews, 53 F3d at 1040.

## III

## A

The Social Security Act provides that certain individuals who are disabled shall receive disability benefits.  42 USC § 423(a)(1)(D).  Disability is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(2)(A).  An individual is considered "disabled" if his impairments are such "that he is

17

not only unable to do his previous work but cannot * * * engage in any other kind of substantial gainful work which exists in the national economy * * *."  Id.

SSA regulations require that an ALJ follow a five-step sequential evaluation process to determine whether a claimant is disabled.  20 CFR §§ 404.1520, 416.920.  The five-step evaluation process is as follows: (1) determine whether the claimant is currently employed in substantial gainful activity (i e, work that involves significant physical or mental activities, and is performed for pay or profit); (2) if the claimant is not currently employed in such activity, then determine whether the claimant has a severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work; (3) if the claimant does have such an impairment or combination of impairments, then determine whether the claimant has an impairment(s) which meets or equals the impairments in the Listing of Impairments, 20 CFR pt 404, subpt p, app 1; (4) if the claimant does have such an impairment(s), then the claimant will be considered disabled, but if the claimant does not have such an impairment(s), then determine whether the claimant has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, then determine whether the claimant has the residual functional capacity to perform any other work which exists in substantial numbers in the national economy.  20 CFR § 404.1520.  The determination that a claimant can perform other work may be established: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 CFR pt 404, subpt p, app 2.

United States District Court
For the Northern District of California

Id.  If a claimant is unable to perform any other work, then the claimant will be considered disabled.  Id.

A claimant may be found "not disabled" at any step in the five-step evaluation process; a claimant may be found "disabled" only at step three or five.  20 CFR § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four.  **Bustamante v Massanari**, 262 F3d 949, 953-54 (9th Cir 2001) (citing **Tackett v Apfel**, 180 F3d 1094, 1098 (9th Cir 1999)).  At step five, the burden of proof shifts to the SSA.  Id; see also **Brown v Apfel**, 192 F3d 493 (5th Cir 1999) ("This shifting of the burden of proof [] is neither statutory nor regulatory, but instead, originates from judicial practices.") (citing **Walker v Bowen**, 834 F2d 635, 640 (7th Cir 1987)).  In addition, the ALJ has an affirmative duty to assist the claimant in developing the record at each step of the evaluation process.  **Bustamante**, 262 F3d at 954.

At step two of the evaluation process, if the claimant suffers from a combination of impairments, the combined effect of all impairments will be considered "without regard to whether any such impairment, if considered separately, would be of sufficient severity."  42 USC § 423(d)(2)(B), 20 CFR § 404.1523.  Further, if the claimant has "a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the evaluation process."  Id.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities * * *."  42 USC § 423(d)(3).  SSA regulations set forth a list of impairments that include sickle cell disease (7.05), diabetes mellitus (9.08), affective disorders (12.03),

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

psychotic disorders (12.04) and substance addiction disorders
(12.09).  See 20 CFR pt 404, subpt p, app 1; 20 CFR § 404.1525
("The Listing of Impairments describes, for each of the major body
systems [such as the hemic and lymphatic system (7.00), the
endocrine system (9.00) and mental disorders (12.00)], impairments
which are considered severe enough to prevent a person from doing
any gainful activity.").  It is not enough simply to have the named
impairment(s); a claimant must have signs and symptoms that meet or
equal the detailed criteria set forth in the Listing of
Impairments.  Id.

**B**

        Plaintiff contends that the final decision of the ALJ is
in error because the ALJ: (1) failed properly to apply the law
regarding the materiality of drug addiction and alcoholism to her
case; (2) failed to give proper weight to the medical opinions of
plaintiff's treating physicians and to give adequate consideration
to the non-exertional limitations imposed by plaintiff's mental
impairments; (3) failed adequately to consider the evidence from
plaintiff's treating physicians; (4) failed properly to evaluate
plaintiff's credibility; and (5) failed to use a medical or
psychiatric expert in accordance with SSR 96-6p as to plaintiff's
residual functional capacity.  Doc # 18 at 2.

**1**

        Plaintiff contends that the ALJ erred in applying the law
regarding the materiality of DAA to her case.  Doc # 18 at 11-17.
\\

20

1    In 1995, the SSA added sections 404.1535 through 404.1541
2  to Volume 20, Part 404 of the Code of Federal Regulations ("CFR").
3  Section 404.1535 provides that "if we find that you are disabled
4  and have medical evidence of your drug addiction or alcoholism, we
5  must determine whether your drug addiction or alcoholism is a
6  contributing factor material to the determination of disability."
7  20 CFR § 404.1535(a).  Sections 404.1536 through 404.1541 provide,
8  inter alia, that "[i]f we determine that you are disabled and drug
9  addiction or alcoholism is a contributing factor material to the
10 determination of disability (as described in § 404.1535), you must
11 avail yourself of appropriate treatment for your drug addiction or
12 alcoholism * * *."  20 CFR § 404.1536(a).  Accordingly, an initial
13 finding of disability under the five-step evaluation process, in
14 addition to a finding that DAA is a contributing factor material to
15 the determination of the claimant's disability pursuant to §
16 404.1535, meant that the claimant must avail himself or herself of
17 treatment pursuant to §§ 404.1536 through 404.1541 to receive
18 disability benefits.

19    In 1996, Congress passed the Contract with America
20 Advancement Act ("CAAA"), Public Law 104-121, 110 Stat 847 (March
21 29, 1996).  The CAAA, inter alia, amended the Social Security Act
22 and modified the definition of the term "disability" such that "an
23 individual shall not be considered to be disabled for purposes of
24 [benefits under Title II or XVI of the Act] if alcoholism or drug
25 addiction would (but for this subparagraph) be a contributing
26 factor material to the Commissioner's determination that the
27 individual is disabled."  42 USC § 423(d)(2)(C).
28 \\

21

United States District Court

For the Northern District of California

1    The SSA did not issue new regulations to reflect the

2  changes to the definition of disability wrought by 42 USC §

3  423(d)(2)(C).  Instead, the SSA and a number of courts have

4  construed 42 USC § 423(d)(2)(C) to work in conjunction with 20 CFR

5  § 404.1535.  As a result, if a claimant is found "disabled" under

6  the five-step evaluation process in 20 CFR § 404.1520 and there is

7  medical evidence that DAA is a contributing factor material to the

8  determination of the claimant's disability, the claimant is

9  considered "not disabled" and is disqualified from receiving

10  disability benefits.  See, e g, SSA, Office of Disability, EM-96200

11  (08/30/96) (originally EM-96-94) ("Questions and Answers Concerning

12  DAA from the 07/02/96 Teleconference - Medical Adjudicators -

13  ACTION"); Ball v Massanari, 254 F3d 817 (2001); Bustamante v

14  Massanari, 262 F3d 949 (2001).  Accordingly, an initial finding of

15  "disabled" under the five-step evaluation process is not sufficient

16  to qualify an individual for disability benefits if there is

17  evidence of DAA in the record.

18    Section 423(d)(2)(C) did not amend the CFR, the five-step

19  evaluation process or the "materiality analysis" in 20 CFR §

20  404.1535; its effect is only to bar a finding of disability if a

21  claimant's DAA is found to be "material" pursuant to § 404.1535.

22  In addition, for all intents and purposes, 42 USC § 423(d)(2)(C)

23  made the materiality analysis the final determination regarding

24  whether a claimant is considered disabled, following the now-

25  provisional determination of disability under the five-step

26  evaluation process in 20 CFR § 404.1520.

27    The Ninth Circuit held that "it is premature to evaluate

28  the impact of [a claimant's] alcoholism without a finding that he

22

is disabled under the five-step inquiry."  <u>Bustamante</u>, 262 F3d at

955 n 1 (2001).  The court explained that:

> [A]n ALJ must conduct the five-step inquiry without
> separating out the impact of alcoholism or drug
> addiction.  If the ALJ finds that the claimant is not
> disabled under the five-step inquiry, then the claimant
> is not entitled to benefits and there is no need to
> proceed with the analysis under 20 CFR §§ 404.1535 or
> 416.935.  If the ALJ finds that the claimant is disabled
> and there is "medical evidence of [his or her] drug
> addiction or alcoholism," then the ALJ should proceed
> under 404.1535 or 416.935 to determine if the claimant
> "would still [be found] disabled if [he or she] stopped
> using alcohol or drugs."

Id at 955 (quoting 20 CFR § 404.1535) (citing <u>Drapeau v Massanari</u>,

255 F3d 1211, 1213 (10th Cir 2001): "[the ALJ erred by] fail[ing]

to determine whether [the claimant] was disabled prior to finding

that alcoholism was a contributing material factor thereto * * *

The implementing regulations make clear that a finding of

disability is a condition precedent to an application of §

423(d)(2)(C).").

        In addition, the language of 42 USC § 423(d)(2)(B), which

mirrors that of 20 CFR §§ 404.1523 and 416.923 (which govern step

two of the five-step evaluation process), states that "in

determining whether a claimant's physical or mental impairment or

impairments are of a sufficient medical severity * * * the combined

effect of all of the claimant's impairments [shall be considered]

without regard to whether any such impairment, if considered

separately, would be of such severity. * * * [T]he combined impact

of the impairments shall be considered throughout the disability

determination process."  And, <u>supra</u>, "substance addiction disorder"

remains a listed impairment in 20 CFR pt 404, subpt p, app 1.

Accordingly, under 42 USC § 423(d)(2)(B) and 20 CFR §§ 404.1523 and

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

416.923, DAA is an impairment that may not be considered separately from other impairments until after an initial finding of disability at either step three or step five in the five-step evaluation process.  See Brueggemann v Barnhart, 348 F3d 689, 694 (8th Cir 2003) ("The ALJ must reach [a disability] determination initially * * * using the standard five-step approach described in 20 CFR § 404.1520 without segregating out any effects that might be due to substance use disorders.").

In Ball v Massanari, the Ninth Circuit further explained that before conducting a materiality analysis pursuant to 20 CFR § 404.1535, an ALJ should look to the record to see whether there is a clear indication that the claimant's non-substance-abuse-related impairments are not "severe" within the meaning of step two of the five-step evaluation process.  254 F3d 817, 823 (9th Cir 2001).  If there is such a clear indication, then the ALJ need not conduct the materiality analysis and "separate out" the non-substance-abuse-related impairments from the substance-abuse-related impairments.  Id.  Accordingly, if there is no such clear indication, then the ALJ must conduct the materiality analysis.

Plaintiff contends, incorrectly, that the SSA bears the burden of proving that a claimant's DAA is a contributing factor material to the determination of her disability pursuant to 20 CFR § 404.1535.  Doc # 18 at 11.

Plaintiff cites Sousa v Callahan, 143 F3d 1240, 1245 (9th Cir 1998), in which the Ninth Circuit held that "[c]laimants subject to [42 USC § 423(d)(2)(C)] must be given an opportunity to present evidence as to whether their disability would have remained if they stopped using drugs and alcohol."  Sousa, however, does not

24

support plaintiff's contention, but rather the opposite
proposition: that the claimant bears the burden of presenting
evidence to establish his or her impairments would remain if he or
she stopped using drugs or alcohol (i e, that DAA is not a
contributing factor material to the determination of the claimant's
disability). See Doughty v Apfel, 245 F3d 1274, 1279-80 n 3
(2001).

Further, although Sousa resulted in a remand to the
district court, it is readily distinguishable from the present
case. In Sousa, "when the [ALJ] hearing was held, [42 USC §
423(d)(2)(C)] was not yet in existence. At that time, [DAA] could
support a finding of disability, and plaintiff presented her case
accordingly." 143 F3d at 1245 (9th Cir 1998). Accordingly, the
Ninth Circuit remanded because the "plaintiff never had an
opportunity to present evidence relevant to the amendment's primary
inquiry: whether plaintiff's [impairments] would remain during
periods when she stopped using drugs and alcohol." Sousa, 143 F3d
at 1245. Because the plaintiff presented her case before the
intervening law change, reasonably believing that DAA would support
a finding of disability, the court held that the plaintiff was
entitled to further process.

By contrast, no intervening law change assists plaintiff
in the instant matter; 42 USC § 423(d)(2)(C) was part of the legal
landscape for seven years before plaintiff presented her case to
the ALJ. Moreover, at plaintiff's hearing, the ALJ stated, and
plaintiff's counsel acknowledged, that the key inquiry before the
court was whether or not DAA was a contributing factor material to
the determination of plaintiff's disability. AR 312-13.

United States District Court

For the Northern District of California

1    In addition, in **Ball**, the Ninth Circuit clarified that

2    "[i]n materiality determinations pursuant to 42 USC § 423(d)(2)(C),

3    the claimant bears the burden of proving that his alcoholism or

4    drug addiction is not a contributing factor material to his

5    disability determination."  254 F3d 817, 821 (9th Cir 2001) (citing

6    **Brown v Apfel**, 192 F3d 492 (5th Cir 1999); **Mittlestedt v Apfel**, 204

7    F3d 847 (8th Cir 2000)).  Cf **Bustamante**, 262 F3d 949, 955 n 1

8    (2001) ("[T]he claimant bears the burden of proving that his

9    alcoholism or drug addiction is not a contributing factor material

10   to his disability determination.").

11   Further, in **Reeves v Barnhart**, 2002 WL 31553376 at *13

12   (ND Cal 2002) (James, MJ), another judge of this court stated that

13   "plaintiff has the burden of * * * presenting evidence as to

14   whether his disability would remain if he stopped using alcohol."

15   (citing **Ball**, 254 F3d at 821; **Sousa** 143 F3d at 1245).  See also

16   **Brueggemann v Barnhart**, 348 F3d 689, 694 (8th Cir 2003) ("The

17   burden of proving that alcoholism was not a contributing factor

18   material to the disability determination falls on [the

19   claimant].");  **Doughty v Apfel**, 245 F3d 1274, 1280 (11th Cir 2001)

20   ("[I]n materiality determinations pursuant to 42 USC §

21   423(d)(2)(C), the claimant bears the burden of proving that his

22   alcoholism or drug addiction is not a contributing factor material

23   to his disability determination.");  **Brown v Apfel**, 192 F3d 492, 498

24   (5th Cir 1999) ("[The claimant] bears the burden of proving that

25   drug or alcohol addiction is not a contributing factor material to

26   her disability.");  **Eltayyeb v Barnhart**, 2003 WL 22888801 at *4 (SD

27   NY 2003) ("When the record reflects drug or alcohol abuse, the

28   \\

26

United States District Court

For the Northern District of California

claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination.").

Plaintiff also contends, incorrectly, that language in 20 CFR § 404.1535 such as "we will determine," "we must determine," "process we will follow" and "we will evaluate" supports her contention that once a claimant has demonstrated substantial evidence of disability, the burden shifts to the SSA ("we") to establish that DAA is a contributing factor material to the determination of the claimant's disability.  Doc # 18 at 13.  Each step of the five-step evaluation process in 20 CFR § 404.1520, however, contains nearly identical language to that in § 404.1535, such as "process we will use to decide," "we make a determination or decision," "we assess," "we evaluate," "we consider" and "we will find," and yet the burden in steps one through four lies with the claimant, not with the SSA.  See Bustamante, 262 F3d at 953 ("The claimant has the burden of proof for steps one through four * * *.").

As the Fifth Circuit stated in Brown, "[The claimant] is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction.  We are at a loss to discern how the [SSA] is supposed to make such a showing, the key evidence for which will be available most readily to [the claimant]."  192 F3d at 498.  See also Bowen v Yuckert, 482 US 137, 146 n 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Plaintiff also relies on a 1996 Social Security teletype ("teletype") for the proposition that "once the evidence

27

United States District Court

For the Northern District of California

establishes that the claimant is under a disability, if SSA is
unable to separate the effects of substance abuse from other mental
restrictions and limitations, the claimant is to be found
disabled." Doc #18 at 14. That teletype states in pertinent part:
"When it is not possible to separate the mental restrictions and
limitations imposed by DAA and the various other mental disorders
shown by the evidence, a finding of 'not material' would be
appropriate." EM-96200 (08/30/96). The teletype essentially
suggests that a claimant, having established disability under the
five-step disability evaluation process, may be found disabled if
the claimant is able to establish that his or her DAA-based
impairments are inseparable from his or her underlying mental
impairments.

Plaintiff offers no support for her contention that the
teletype shifts the burden of proof onto the SSA to establish that
plaintiff's DAA-based impairments are inseparable from her mental
impairments. At a minimum, it is reasonable for a claimant who
hopes to benefit from the favorable presumption set forth in the
teletype to retain the burden of establishing that his or her DAA-
based impairments are inseparable from his or her mental
impairments. Plaintiff has not met this burden, and the record
does not support her contention.

Although the ALJ made the favorable assumption that
plaintiff's mental impairments were not dependent on plaintiff's
DAA and would exist even if plaintiff's DAA ceased (AR at 17),
there is no indication in the record that plaintiff's DAA-based
impairments are inseparable from her underlying mental impairments
(in fact, contrary to the ALJ's assumption, there is no indication

United States District Court

For the Northern District of California

1  in the record that plaintiff actually has any underlying mental

2  impairments).  While plaintiff's treating physicians' diagnoses

3  establish that plaintiff suffers from depression and psychosis, the

4  diagnoses also establish that the physicians need to "rule out"

5  substance abuse as a potential cause of plaintiff's mental

6  impairments (depression disorder NOS and psychotic disorder NOS are

7  both diagnoses in which it is unclear when given whether substance

8  abuse is a causal factor, DSM-IV at 337, 408).  AR 234, 238, 244,

9  254 and 264.  Notably, one of plaintiff's treating physicians, Dr

10 Fischer, specifically diagnosed plaintiff's mental impairments as

11 caused by (i e, "secondary to") plaintiff's DAA (thus diagnosing

12 plaintiff's mental impairments as DAA-based impairments rather than

13 underlying mental impairments).  AR 264.  Accordingly, plaintiff

14 failed to establish that her DAA-based impairments are inseparable

15 from her underlying mental impairments, and indeed the ALJ found

16 just the opposite.

17        In summary, plaintiff's various contentions that the ALJ

18 misapplied the law to her case are unavailing.  The ALJ conducted

19 the requisite five-step disability evaluation pursuant to 20 CFR §

20 404.1520, considering the combined effect of plaintiff's

21 impairments (including her ongoing alcohol addiction) throughout

22 the evaluation process pursuant to § 404.1523 and finding at step

23 five that plaintiff was disabled because she was unable to perform

24 other work which exists in substantial numbers in the national

25 economy.  Then, perhaps believing that the record did not clearly

26 indicate that plaintiff's non-substance-abuse-related impairments

27 were not severe, the ALJ proceeded to perform the materiality

28 analysis pursuant to § 404.1535.

United States District Court

For the Northern District of California

Pursuant to 20 CFR § 404.1535, an ALJ must decide: "(1) whether there is medical evidence of the claimant's drug addiction or alcoholism; and, if so, (2) whether the claimant would still be disabled if the claimant stopped using drugs or alcohol.  If the claimant would still be disabled even if she stopped drinking or using drugs, the drug or alcohol abuse is not a contributing factor to the disability.  If the claimant would no longer be disabled if she stopped drinking or using drugs, the drug or alcohol addiction is a contributing factor material to the finding of disability, and the claimant is not entitled to benefits." Dahho v Massanari, 2001 WL 1006817 at *3 (ND Cal 2001) (Breyer, J).  Both determinations must be supported by substantial evidence.  Id.  See, e g, Eltayyeb v Barnhart, 2003 WL 22888801 at *4-7 (SD NY 2003).

First, substantial evidence supported the ALJ's conclusion that plaintiff was still abusing alcohol, including plaintiff's own admissions to the ALJ on the record, statements to her treating physicians that she still drinks and plaintiff's treating physicians' diagnoses which include, or at the least fail to rule out, substance abuse.  AR 16-17.

The record is replete with instances of plaintiff's admitted substance abuse, already noted in Part I of this order.  In 2001, plaintiff admitted using alcohol and drugs such as cocaine, crack and marijuana from 1987 to 1992.  AR 109.  In February 2002, plaintiff admitted consuming a pint of gin and three to four joints of marijuana every day.  AR 200.  In June 2003, plaintiff was still drinking as many as four "little bottles" of champagne in one evening.  AR 233.  At the hearing before the ALJ \\

30

United States District Court

For the Northern District of California

1    and in her evaluation with Dr Fischer shortly afterward, plaintiff

2    admitted drinking significant quantities of cognac.  AR 310.

3         Plaintiff offered no evidence that she has been sober for

4    any period of time since her complaints of depression and "hearing

5    voices" began, nor any doctors' opinions or any other medical

6    evidence that are independent of alcohol abuse.  In light of

7    plaintiff's past drug addiction and alcohol abuse, her current

8    alcohol abuse, the ALJ reasonably concluded that plaintiff was

9    still abusing alcohol.  AR 17.

10        Second, substantial evidence supports the ALJ's

11   conclusion that "if [plaintiff] were to stop drinking, she would

12   have an unlimited physical residual functional capacity.  If not

13   drinking, she would still be capable of simple tasks, despite her

14   depression and 'voices.'"  Id.  While plaintiff's counsel stated at

15   the hearing before the ALJ that "it appears [] from the record that

16   * * * the mental conditions cause the substance abuse and not vice

17   versa" (AR 314-15), plaintiff introduced no evidence in support of

18   this contention apart, perhaps, from plaintiff's statement she

19   smoked crack cocaine to "feel high" and "dismiss[] all the horrible

20   things that happened in [her] life" (AR 293), an admission that

21   does not help her case.

22        Moreover, in contrast to plaintiff's supposition that her

23   mental impairments preceded and caused her DAA, the first

24   indication that plaintiff suffered from depression and "hearing

25   voices" came on March 24, 2003, only four months preceding the

26   hearing before the ALJ (AR 253), and long after plaintiff began to

27   abuse drugs and alcohol, as evidenced in the lengthy and well-

28   documented history of plaintiff's DAA.  AR 156, 259.

United States District Court

For the Northern District of California

1          Further, plaintiff's treating physicians noted that

2    plaintiff was "fashionably dressed" (AR 234), had "well-done hair"

3    (AR 236) and was "well-groomed" (AR 264).  Further, the treating

4    physicians found that plaintiff was "pleasant/cooperative" (AR 234)

5    and had a "pleasant attitude * * * [and] no current feelings of

6    worthlessness," and that her "interactions [with the] staff [and

7    the] physician [were] appropriate" (AR 237), all of which tends to

8    refute plaintiff's claim of disability.  Moreover, the treating

9    physicians found that plaintiff had "normal concentration," was

10   "able to perform tasks and oral instructions" (AR 237), did not

11   evidence any memory difficulty and had "good speech" and

12   "communications [which] did not have any psychotic quality" (AR

13   264).  Notably, one of plaintiff's treating physicians, Dr Salinas,

14   to whom plaintiff denied the use of drugs and alcohol, consistently

15   stated that plaintiff's prognosis was "good."  AR 238, 255.

16          Nonetheless, the ALJ found that the combination of

17   plaintiff's impairments, including substance abuse, was severe, and

18   that "as a result of her impairments, the claimant is unable to * *

19   * sustain employment."  AR 17.   The ALJ, however, found that

20   plaintiff's alcoholism was responsible for plaintiff's disability.

21   Id.  The court finds no medical evidence in the record to refute

22   this finding.  Plaintiff failed to carry her burden of proof and

23   establish that her alcoholism was not a contributing factor

24   material to the determination of her disability.  Accordingly, the

25   ALJ's determination that plaintiff's alcoholism was a contributing

26   factor material to her disability was supported by substantial

27   evidence.

28   \\

2

Plaintiff offers several other challenges to the SSA's determination of her case that are equally unavailing. Specifically, she asserts that the ALJ (1) failed to give proper weight to the opinions of plaintiff's treating physicians and to give adequate consideration to the non-exertional limitations imposed by plaintiff's mental impairments; (2) failed adequately to consider the evidence from plaintiff's treating physicians; (3) failed properly to evaluate plaintiff's credibility; and (4) failed to use a medical or psychiatric expert in accordance with SSR 96-6p as to plaintiff's residual functional capacity.  Doc # 18 at 2. These contentions stem primarily from plaintiff's meritless argument, discussed in Part III B 1, <u>supra</u>, that the ALJ bears the burden of establishing that DAA is not material to the finding of plaintiff's disability.

Plaintiff mischaracterizes the ALJ's ruling as rejecting the opinions of plaintiff's treating physicians and as relying unduly on the opinions of the SSA's consultative and reviewing physicians.  Doc # 18 at 6-9.

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  <u>Holohan v Massanari</u>, 246 F3d 1195, 1202 (9th Cir 2001).  In addition, "treating doctors' opinions can be rejected if they are contradicted by other medical opinions and the ALJ supports his judgment with specific, legitimate reasons.  If the treating doctors' opinions are uncontradicted, the ALJ may still reject them, but must provide clear and convincing reasons."  <u>Dahho v</u>

United States District Court

For the Northern District of California

**Massanari**, 2001 WL 1006817 at \*5 (ND Cal 2001) (Breyer, J) (citing **Reddick v Chater**, 157 F3d 715, 725 (9th Cir 1998)).  Contrary to plaintiff's allegations, however, the ALJ explicitly gave more weight to the opinions of plaintiff's treating physicians than to those of the SSA's consulting examiners.  AR 16-17.  The ALJ "note[d] the sparse and recent evidence of medical treatment" and then accepted plaintiff's treating physicians' diagnoses of depression and psychosis secondary to (per Dr Fisher), or possibly secondary to (per Drs Subramanyan's and Salinas), substance abuse. Id.  Accordingly, the ALJ did not reject or give improper weight to plaintiff's treating physicians' opinions, and was therefore not, as plaintiff asserts, required to justify discounting them.

In addition, the ALJ implicitly accepted Dr Subramanyan's diagnosis that plaintiff's level of functioning was moderately to severely impaired (AR 234) by finding that "plaintiff is precluded from sustaining work at any exertional level."  AR 17.  Further, the ALJ only accepted SSA consulting examiner Dr Rajguru's medical opinion that plaintiff had no functional limitations (AR 224) to support his decision that but for plaintiff's DAA, plaintiff would be physically capable of performing a substantial number of jobs in the national economy because Dr Rajguru had conducted his physical examination without knowledge of plaintiff's DAA.  AR 17. Moreover, while Dr Salinas also conducted her examination of plaintiff without knowledge of plaintiff's DAA, Dr Salinas did not herself diagnose plaintiff with psychosis and depression, but simply incorporated Dr Subramanyan's diagnosis into her own (and, as already noted, the diagnoses of psychosis NOS and depression NOS leave open the possibility of DAA as the cause of the symptoms).

United States District Court

For the Northern District of California

AR 238, 248.  Additionally, Dr Salinas repeatedly stated that plaintiff's prognosis was "good," and that plaintiff possessed normal concentration and could perform simple tasks and follow oral instructions.  AR 238, 255.  The ALJ accepted these findings regarding the non-exertional limitations imposed by plaintiff's mental impairments (AR 17) and accordingly did not fail to give them adequate consideration.

Moreover, the ALJ was under no duty to develop the record further.  SSA regulations state that "when the evidence [the SSA] receives from [the claimant's] treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled," the SSA will seek additional information from plaintiff's treating physicians or through SSA-ordered consultative examinations.  20 CFR §§ 404.1512(e), 416.912(d).  SSA regulations also state that the claimant bears the burden of establishing that he or she is disabled; the claimant "must bring to [the SSA's] attention everything that shows that [he or she is] * * * disabled.  This means that [the claimant] must furnish medical and other evidence that [the SSA] can use to reach conclusions about [the claimant's] medical impairment(s) * * *."  20 CFR § 404.1512(a) (emphasis added).

SSA regulations only require an ALJ to seek additional evidence when the medical reports from plaintiff's treating physicians are conflicting, ambiguous, or do not contain the information necessary to making a determination regarding a claimant's disability.  See generally, 20 CFR § 404.1512; see also Mayes v Massanari, 276 F3d 453, 459-50 (9th Cir 2001).

\\

United States District Court

For the Northern District of California

The medical reports from plaintiff's treating physicians were neither conflicting nor ambiguous.  Moreover, the ALJ held the record open to allow plaintiff to submit further medical reports from her treating physicians.  AR 16.  And, in one medical report so submitted, plaintiff's treating physician Dr Fisher recommended that plaintiff attend "a recovery program or [] 12-step self-help meetings" for her DAA and noted that medication relieved plaintiff's impairments.  AR 264-65.  See Hutton v Apfel, 175 F3d 651, 655 (8th Cir 1999) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability.").  Plaintiff's treating physicians' uncontradicted medical reports contained substantial evidence in support of the ALJ's findings.

Plaintiff also lists among the "issues presented" in her motion that the ALJ failed properly to evaluate her credibility (Doc #18 at 2), but her papers make no attempt to support or develop this meritless contention.  While the ALJ stated that "[t]he claimant's subjective complaints are not substantiated by the medical evidence to the extent alleged and do not support a finding of disability" (AR 18), the ALJ accepted these complaints in his evaluation of plaintiff's alleged disability.  AR 15-17.  Indeed, while plaintiff's counsel at one point stated that plaintiff's DAA was not material to the finding of her disability, plaintiff herself never testified that she would be disabled without her DAA, nor did she introduce evidence to that effect.  The ALJ's decision did not rest on a credibility determination, so there can have been no material error in this regard.

\\

United States District Court

For the Northern District of California

1    Finally, plaintiff contends that the ALJ failed to use a
2 medical or psychiatric expert in accordance with SSR 96-6p as to
3 plaintiff's residual functional capacity.  As pertinent here, SSR
4 96-6p states that an ALJ "must obtain an updated medical opinion
5 from a medical expert * * * [w]hen additional medical evidence is
6 received that in the opinion of the administrative law judge * * *
7 may change the State agency medical or psychological consultant's
8 finding that the impairment(s) is not equivalent in severity to any
9 listed impairment in the Listings of Impairments."  Again, while
10 plaintiff refers to "conflicting opinions," the record reflects no
11 meaningful conflict.  Accordingly, the ALJ was not required to seek
12 out the opinion of another medical expert.

13

14                                   IV

15    For the reasons stated herein, the court affirms the
16 ALJ's decision to deny benefits.  Accordingly, the court DENIES
17 plaintiff's motion for summary judgment (Doc #18) and GRANTS
18 defendant Jo Anne B Barnhart's motion for summary judgment (Doc #
19 23).

20    The clerk is directed to enter judgment in favor of
21 defendant and to close the file.

22

23    IT IS SO ORDERED.

24

25    _____
26    VAUGHN R WALKER
      United States District Chief Judge

27

28

                                  37